United States Bankruptcy Court
Southern District of Texas
**ENTERED**
March 03, 2025
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 22-90291 |
| PIPELINE HEALTH SYSTEM, LLC, *et al.*, | § § | |
| Debtors. | § § | Jointly Administered |
| | § | CHAPTER 11 |

### MEMORANDUM OPINION

AUM Global Healthcare Management, LLC and Resilience Healthcare–Weiss Memorial Hospital, LLC (collectively "Resilience") seek a finding of contempt against Joseph Virruso for maintaining his state court action against certain released parties under the confirmed chapter 11 plan. Virruso's lawsuit concerns medical malpractice claims against the hospital employees arising from pre-petition medical treatment at the Hospital.

Virruso argues that he is allowed to continue his lawsuit because he did not receive notices of the bankruptcy and that the Plan's third-party releases are invalid.

Relief is granted to Resilience.

### BACKGROUND

On February 28, 2022, Joseph Virruso received medical care at Louis A. Weiss Memorial Hospital in Chicago, Illinois. ECF No. 1593 at 3. At that time, Virruso's residence address was 5718 W. 90th Oak Lawn, Illinois 60453.

Around June 1, 2022, Virruso changed his residence address. ECF No. 1593 at 3. He never provided a change of address notice to Resilience.

On October 2, 2022, Resilience filed for chapter 11 in this Court. ECF No. 1569 at 3.

On November 22, 2022, the Debtors filed the *Emergency Motion for Entry of an Order (i) Approving the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; (ii) approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; (iii) Dismissing Certain of the Debtors' Chapter 11 Cases; and (iv) Granting Related Relief* seeking approval of the sale of its Chicago hospital facilities. ECF No. 534. The Court entered an Order granting this Sale Motion on November 30, 2022.

The Sale Order approved the Membership Interest Purchase Agreement ("MIPA") entered between AUM as buyer and SRC Hospital Investments II, LLC as seller. Pursuant to the MIPA, pre-petition medical malpractice claims were "Excluded Liabilities" from the Sale. The Excluded Liabilities were to be assumed by the Pipeline-affiliated debtors following the Sale. ECF No. 1569 at 4. The Exclusion Liability Assumption Agreement provides:

> Seller Parties hereby agree to retain or assume as, applicable, the Excluded Liabilities in accordance with the terms and conditions set forth herein. Buyer shall have no liability on account of the Excluded Liabilities and the Seller Parties will be fully responsible for all Excluded Liabilities. Excluded Liabilities that do not constitute administrative expenses or priority unsecured claims under the Bankruptcy Code prior to Seller Parties' assumption of each Excluded Liabilities shall not constitute or be deemed to constitute administrative expenses or priority unsecured claims in respect of Seller Parties upon or after such assumption. The Seller Parties shall use commercially reasonable efforts to address the Excluded Liabilities in any chapter 11 plan with respect to Seller Parties (if any) in a manner consistent with the terms and conditions of the MIPA.

ECF No. 1568-1 at 3.

On January 13, 2023, the Court entered the Confirmation Order approving the *Second Amended Joint Chapter 11 Plan of Reorganization of Pipeline Health System, LLC and Its Debtor Affiliates*. ECF No. 1041.

The Plan enjoins the commencement or continuation of any cause of action against any Released Party. Article VIII.D of the Plan provides:

> Effective as of the Effective Date . . . to the fullest extent permissible under applicable Law, each Releasing Party . . . in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Claim, Cause of Action, directly or derivatively, by, through, for, or because of a Releasing Party, is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged . . . each other Released Party from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise . . . or upon any other act, omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

ECF No. 500 at 53. Claimholders against the Debtors are Releasing Parties unless the holder opts out of the releases under Article VIII.D of the plan; or timely files an objection to the releases before plan confirmation.

"Released Parties" include any current or former affiliate of Pipeline and "each Related Party" of the same. ECF No. 500 at 17. "Related Party" includes among others, employees of the Pipeline-affiliated entities. ECF No. 500 at 16.

On January 29, 2024, Virruso commenced an Illinois state court action against the Hospital and its employees, asserting medical malpractice claims arising from his February 2022 medical treatment. ECF No. 1569 at 7.

On July 22, 2024, Resilience filed its Enforcement Motion, seeking enforcement of the Sale Order as to Virruso's claims against the Hospital. ECF No. 1540

On August 28, 2024, the Court entered the Enforcement Order, finding Virruso to be in contempt of the Court's Confirmation Order. ECF No. 1548. The Court required Virruso to dismiss its state court claims against the Hospital. ECF No. 1548.

On August 30, 2024, Virruso filed its motion to voluntarily dismiss the Hospital in the state court proceeding. On September 3, 2024, the state court granted dismissal of the Hospital from the lawsuit. ECF No. 1569 at 8.

On October 1, 2024, Virruso filed its motion to vacate contempt finding of the Court's Enforcement Order entered on August 28, 2024, on the basis that the State Court Action was dismissed against the Hospital. ECF No. 1569 at 8.

On October 21, 2024, Resilience sent a letter to Virruso requesting dismissal of the hospital employees from the lawsuit. ECF No. 1569 at 8.

On October 22, 2024, Resilience filed its Opposition to Motion to Vacate. On the same date, Resilience filed its Motion to Amend Enforcement Order. ECF No. 1569.

On October 30, 2024, the Court vacated the finding of contempt against Virruso and his counsel in its August 28 Enforcement Order. ECF No. 1579.

On February 19, 2025, the Court held a hearing on Resilience's Motion to Amend Enforcement Order.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(H). The

dispute has been referred to the Bankruptcy Court under General Order 2012-6.

## DISCUSSION

Resilience requests the Court to amend its prior Enforcement Order to reflect that Virruso and his counsel are to be held in contempt of the Court's final orders as long as the Hospital Employees remain named defendants in the Illinois State Court Action. ECF No. 1569.

Virruso's Brief argues that: (1) he did not receive adequate notice of the bankruptcy proceedings to bind him to the Confirmation Order, (2) opt-out procedures do not procure consent for third-party releases and, (3) he is not precluded from suing the employees in their personal capacities. ECF No. 1593.

### I. VIRRUSO RECEIVED ADEQUATE NOTICES IN THE BANKRUPTCY PROCEEDING.

Creditors in a bankruptcy case are protected by due process, which requires notices of events in a bankruptcy case that could adversely affect their rights. Due process requires that notice must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 214 (1950).

Known creditors must be given notice of the bankruptcy proceedings and relevant bar dates. *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 296 (1953). Notice of the bar date is reasonably calculated for due process purposes, if it was sent "by First Class U.S. Mail to the last known address of a creditor . . . ." *In re Eagle Bus Mfgs., Inc.*, 62 F.3d 730, 736 (5th Cir. 1995). It is the duty of the creditor to notify the debtor of any changes in their mailing address. *Id.* If the creditor fails to update their address, they cannot later argue that their due process rights were violated. *Id.*

Correctly mailed notice creates the common law presumption that proper notice was given. *Id.* at 735 (quoting *In re Schepps Food Stores, Inc.*, 152 B.R. 136, 139 (Bankr. S.D. Tex. 1993)). The question is "whether the sender properly mailed the notice and not whether the intended recipient received it." *Id.* Mere denial of receipt of notices does not rebut the presumption that proper notice was given. *Id.* at 735–36; *Linder v. Trump's Castle Assocs.*, 155 B.R. 102, 106 (D.N.J. 1993).

Here, the evidence creates the presumption that proper notice was given. Epiq's Affidavit of Service provides that notices of the Chapter 11 Bankruptcy Case and proof of claim bar deadlines were mailed via first class mail to Virruso's W. 90th Oak Lawn address. ECF No. 1601-1. Virruso was also served with the Confirmation Hearing Notice at the same address. ECF No. 1602-1 at 3.

Virruso has not provided any evidence to rebut this presumption. The fact that notice was not mailed to his current address does not establish that due process was not satisfied. Notice is satisfied for due process purposes if it was sent via first class mail to the *last known address of the creditor*. *In re Eagle Bus Mfgs., Inc.*, 62 F.3d 730, 736 (5th Cir. 1995). The Oak Lawn address was Virruso's residential address during the time of his treatment at the Hospital. He changed addresses a few months after his treatment. It was his duty to notify the relevant debtor entity about updating his address. He did not do so.

## II. THIRD-PARTY RELEASES CONTAINING OPT-OUTS ARE CONSENSUAL.

Virruso argues that the third-party releases here are nonconsensual because opt-out procedures were used. ECF No. 1593 at 6. Virruso asserts that opt-ins, rather than opt-outs, procure consent. ECF No. 1593 at 7.

Nonconsensual third-party releases are not allowed in a chapter 11 plan. *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024) (aligning with existing Fifth Circuit law). In its holding, the Supreme Court left open the question of what qualifies as consent for such

releases. *Id.* at 226 ("Nor do we have occasion today to express a view on what qualifies as a consensual release . . . .").

Opt-out procedures are a proper means to obtain consent to third-party releases in a chapter 11 plan. *See Cole v. Nabors Corp. Servs., Inc. (In re CJ Holding Co.)*, 597 B.R. 597, 608–09 (S.D. Tex. 2019) (Rosenthal, J.); *In re Robertshaw US Holding Corp.*, 662 B.R. 300 (Bankr. S.D. Tex. 2024).

The fact that Virruso did not receive an opt-out form—because he did not file a proof of claim—does not change the result here. A creditor cannot appeal from a confirmation order, even if the plan contains third party releases, if they received the relevant notices, but failed to file a proof of claim, appear in a bankruptcy proceeding, or object to the plan. *See CJ Holding*, 597 B.R. at 609. Virruso did not assert his rights in any form.

A confirmation order binds creditors to a chapter 11 plan if due process notice requirements are met. In *United Student Aid Funds, Inc., v. Espinosa*, the Supreme Court held that a chapter 13 plan discharging student loan debt was enforceable against a creditor who received due process notice, even though there was no finding of undue hardship. 559 U.S. 260, 275 (2010). A bankruptcy court can only grant a discharge of student loan debt if there is a finding of undue hardship in an adversary proceeding. 11 U.S.C. § 523(a)(8); FED. R. BANKR. P. 7001(6). The creditor was not served with the summons and complaint required for commencement of an adversary proceeding under Rule 7004(b)(3). *Espinosa*, 559 U.S. at 272. But the Supreme Court held that this deprivation of a procedural rule did not amount to a violation of the creditor's due process rights. *Id.* at 274. Because the creditor received due process notice, it was deemed bound by the plan provisions, including the student loan discharge. *Id.* at 275.

Here, the mailed notices were reasonably calculated to satisfy due process requirements. Virruso is bound to the Plan Confirmation Order and the releases.

### III. VIRRUSO CANNOT SUE THE HOSPITAL EMPLOYEES IN THEIR PERSONAL CAPACITY.

Virruso claims that he can still sue the Hospital Employees in their personal capacity for claims arising from his injury. ECF No. 1593 at 7. Virruso's argument is unavailing.

The language in the Plan is clear: the Hospital Employees are released parties for *any* prepetition claims. The Plan does not differentiate between whether the employees were acting in their personal or professional capacity.

Accordingly, Virruso remains in contempt of the Court's Orders as long as the employees are named defendants in the lawsuit.

### CONCLUSION

A separate order will be entered.

SIGNED 03/03/2025

_____
Marvin Isgur
United States Bankruptcy Judge